CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 22 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADIB EDDIE RAMEZ MAKDESSI, | ) | CASE NO. 7:13CV00079 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| L. J. FLEMING, WARDEN, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Adib Eddie Ramez Makdessi, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, and the case is now ripe on the defendants' motion for summary judgment. Upon review of the record, the court finds material facts in dispute as to Makdessi's claims that, to retaliate against Makdessi for a pending lawsuit, one group of defendant prison officials cuffed him behind his back, knowing it would cause serious pain to his injured shoulder. For the reasons stated, the court denies summary judgment as to this claim, but grants summary judgment as to Makdessi's other contentions.[1]

## I. Background

In November 2012, Makdessi was incarcerated in the protective custody unit at Keen Mountain Correctional Center. At that time, Makdessi was pursuing a § 1983 complaint in which he alleged that, in December 2010 at Wallens Ridge State Prison, he was raped by his cell mate and attacked by other gang members and that the defendant officers either solicited or deliberately failed to intervene. See Makdessi v. Fields, et al., Case No. 7:11CV262. By

---

[1] This opinion and the accompanying order will replace the opinion and order issued on September 18, 2014, to correct minor typographical errors and to change the location for the jury trial to be scheduled in this matter, but do not otherwise alter the court's rulings on the parties' motions.

November 2012, the court had denied summary judgment in part, referred the remaining claims to the magistrate judge, and obtained <u>pro bono</u> counsel for Makdessi.[2]

In Feburary 2013, Makdessi filed the present § 1983 action, asserting that the defendant prison officials had retaliated against him for the pending lawsuit in various ways. Liberally construing his amended complaint filed in May 2013, these are the issues he has brought before the court:

1. On November 29, 2012, four prison officials "connected to the old lawsuit" (Major Gallihar, Lt. Fields, Lt. McQueen, and Assist. Warden Kiser) retaliated against Makdessi by sending three officers from Red Onion State Prison (Officers Ayers, Pope, and Johnson) to "threaten[ ] [him] to drop the old ongoing lawsuit"[3] by (a) shaking down his cell; (b) intentionally reinjuring Makdessi's shoulder by cuffing his hands behind his back, although other inmates were cuffed to the front, and (c) throwing away documents and legal supplies from the lawsuit. (Amend. Compl. 1, ECF No. 19-2.) Keen Mountain's Officer Yates assisted in these actions which were "allowed and encouraged" by Warden Fleming, Assistant Warden Clary, Protective Custody ("PC") Unit Manager Sykes, PC Lt. Owens, and PC Officer Phillips,[4] while Major Kelly supervised and did not intervene. (Id.)

---

[2] Sometime later, the magistrate judge recommended entry of judgment for the defendants and the court adopted the recommendations. <u>Makdessi v. Fields</u>, Case No. 7:11CV00262, 2013 WL 5353330 (W.D. Va. Sept. 24, 2013). Makdessi's appeal in that case is now pending before the United States Court of Appeals for the Fourth Circuit (No. 13-7606).

[3] These officers allegedly told Makdessi that they knew about his lawsuit and that he was "a troublemaker, and a cry baby, because [he] cried like a baby when [he] got raped at Wallens Ridge"; that he could not hide, because even in protective custody, they would come and find you, and get you;" and that Gallihar, Fields, McQueen, and Kiser "sent [him] their regards." (Id. 2.) As the officers searched his cell, Makdessi alleges that he heard them say "they needed to find anything with Asst. Warden Kiser's name on it and destroy it." (Id. 3.)

[4] Makdessi refers to this defendant as Officer Philip. Because it is now clear that the officer's actual name is Phillips, the court will use that name.

2. Before the search, Makdessi "was made to strip down naked, and made to bend over, and jump up and down, and squat down, and repeat the process . . . and do things that were very uncomfortable and sexual in nature, and painful." (Id. 2.)

3. Officers at the shakedown did not ensure that Makdessi received medical treatment after his shoulder was reinjured during the search.

4. On March 12, 2013, Defendant Owens had him "sit on a hard metal chair in his office for 7 hours [straight]" in spite of his back injury. (Id. 5.)

5. On March 13, 2013, Makdessi was "strap[p]ed to an electrical shock box on [his] back and strap[p]ed tight to [his] waist in order to cause [him] pain and make [him] paranoid" so that he could not concentrate on his court case that day. (Id.)

6. After Makdessi complained that Officer Phillips had sexually assaulted and harassed him related to the strip search on November 29, 2012, Owens retaliated by putting Makdessi in segregation from April 16 to 25, 2013, without a disciplinary charge.

Makdessi also asserts that the alleged instances of retaliation present independent violations of his constitutional rights under the First, Fourth, Eighth, or Fourteenth Amendments. The defendants have filed answers (ECF Nos. 45 & 60) and a motion for summary judgment (ECF No. 61), supported by numerous affidavits. Makdessi has filed two verified responses to their arguments and evidence (ECF Nos. 46 and 66), making the defendants' motion ripe for consideration.[5]

---

[5] The court finds the motion for summary judgment ripe for disposition, despite Makdessi's complaints that he did not have access to hours of surveillance camera footage on multiple dates, as he requested in discovery before the defendants responded to his complaint. The court granted the defendants a protective order, pending their submission of the summary judgment motion. Thereafter, Makdessi moved to subpoena certain footage "for trial." (Motion 1, ECF No. 68.) Moreover, even now, he fails to show that any of the requested video footage would resolve any factual dispute material to the disposition of his claims on summary judgment. As the court herein determines that Makdessi's claims about being cuffed behind his back during the shakedown on November 29, 2012, must go to trial, the court will direct the defendants to produce the video of the shakedown on that date.

3

## II. Discussion

Makdessi's primary contention in this lawsuit has been that the defendants' actions during the shakedown on November 29, 2012, and thereafter were taken in retaliation for his then-ongoing lawsuit. Prison officials may not punish an inmate for exercising his constitutional right to access the court. Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). On the other hand, retaliation claims by prisoners against prison officials "must...be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). An inmate must present more than "naked allegations of reprisal." Id. He must state specific facts to establish that (a) in response to his exercise of a constitutionally protected right, (b) the defendant took some action that (c) adversely impacted or injured him and his ability to exercise his constitutional right. Id. He must demonstrate that his exercise of his constitutional right was a "substantial" or "motivating" factor behind the allegedly retaliatory action. Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action"). Mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory action "is simply too slender a reed on which to rest" a §1983 retaliation claim. Id. at 91. Similarly, alleged retaliatory conduct that causes no more than mere inconvenience to the plaintiff's exercise of his constitutional right is insufficient to support a § 1983 claim. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 786 (4th Cir. 1993).

### A. Defendants Gallihar, Fields, McQueen, and Kiser

In response to the defendants' evidence on summary judgment, Makdessi states that he will withdraw his claims against Defendants Gallihar, Fields, McQueen, and Kiser, because his only evidence against them is "hearsay." (Second Verified Response 2, ECF No. 66.) Based on this unequivocal intent to withdraw all claims against these defendants, the court will dismiss Makdessi's claims against Gallihar, Fields, McQueen, and Kiser.

### B. The Shakedown

Makdessi does not specifically retract any of his factual allegations about the shakedown, however, and asserts that he has forecast facts supporting claims of retaliation against the other defendants. He alleges that when Pope, Ayers, and Johnson came to search his cell on November 29, 2012, and wanted to handcuff him behind his back, he showed them medical records of ongoing treatment of his left shoulder. They allegedly told him, "[You] should just drop the lawsuit, and [you] will no longer be treated badly," and said "[we'll] cuff [your] hands to the back anyway even when it cause[s] [you] reinjury." (Amend. Compl. 2.) Makdessi allegedly asked Officer Yates why he was handcuffed to the back when other inmates in the area were handcuffed to the front, and complained that his left shoulder hurt and his arm was going numb. Yates allegedly said, "[O]rders are from above," while looking at Major Kelly, a nearby Keen Mountain officer.[6] (Id. 3.)

On summary judgment, the defendants present undisputed evidence that, on November 29, 2012, the search team members (Pope, Ayers, and Johnson), came from different prisons as

---

[6] Makdessi submits affidavits from other inmates present in the unit on November 29, 2012, who say they had their hands cuffed to the front while the officers searched their cells. Inmate Hawks states that the officers told him they were from Red Onion and that they would not give him a hard time, but said "those two are getting their cells tore up," pointing to Makdessi and another inmate. (Hawks Affid. 1, ECF No. 19-4.) When Hawks asked why, the officers said, "They are cry babies and tro[u]ble makers." (Id.) Makdessi also asserts that the surveillance camera footage will verify that all but one of the other inmates in his area were cuffed to the front during the shakedown process on November 29, 2012.

5

part of a Virginia Department of Corrections ("VDOC") strike force, at the request of the warden of Keen Mountain as approved by the VDOC regional director,[7] to scour that facility for a purported zip gun. Keen Mountain officers had received an anonymous, handwritten note stating that there was a zip gun with ammunition inside the compound. The institution went on lockdown while the strike force conducted a shakedown of the entire facility, as they are specially trained and equipped to do. The strike force defendants state that they did not know of Makdessi or his lawsuit against Wallens Ridge officers. All of the defendants deny making any lawsuit-related comments during the search, as Makdessi describes, and say they do not recall the search of his cell. Defendant Sykes recalls contacting the medical unit to find out if a medical order was on file, requiring that Makdessi be cuffed to the front and learning that there was no such order.

On this record, the court finds no material dispute of fact on which Makdessi could persuade a jury that his past lawsuit was a substantial motivating factor for the defendants to shakedown his cell on November 29, 2012.[8] The court will, therefore, grant the defendants' motion for summary judgment as to Makdessi's claims of retaliation related to the cell search on November 29, 2012.

## C. Cuffing to the back as retaliation

Makdessi's claim that the strike force and Keen Mountain defendants retaliated against him for his pending lawsuit by cuffing him differently than other inmates despite his complaints

---

[7] It is undisputed that Gallihar, Fields, McQueen, and Kiser at Wallens Ridge have no authority to activate the VDOC strike force for a shakedown at Keen Mountain.

[8] As stated, Makdessi does not withdraw the allegations about the defendants' conversations about his lawsuit during the search and says, vaguely, that they lied in their affidavits. Alone, these comments, even if proven, are not sufficient bases for finding that the lawsuit was a substantial or motivating factor for the shakedown of the prison, when weighed against the undisputed evidence that the zip gun threat was the reason Keen Mountain officials called in the strike force officers.

6

of shoulder pain presents in a different stance, however. The parties agree that the strike force officers had the option to handcuff Makdessi to the front during the entire cell search process even without a medical order requiring such restraint.[9] Yet, Makdessi alleges they failed to do so, despite his complaints of pain. The parties disagree as to whether all other inmates were also cuffed to the back while their cells were searched, whether the officers made comments implying that they were cuffing Makdessi to the back to punish him for his lawsuit, and whether Makdessi can prove that he suffered constitutionally significant harm from their actions.[10] At this stage, the court cannot say that no reasonable jury could find that retaliation for the lawsuit was a substantial factor in the decision made by Pope, Ayers, and Johnson, with Kelly's supervision, to cuff Makdessi behind his back. Based on these disputes, the court will deny summary judgment for these four defendants as to Makdessi's claim of retaliatory cuffing.

The court will grant summary judgment for Yates, however. Yates' undisputed affidavit indicates that he was in training on November 29, 2012, and merely assisted in the property searches. Moreover, Makdessi does not allege that Yates assisted in the cuffing process or state facts showing that this officer had authority to make decisions about how the strike force officers conducted this procedure. See Randall v. Prince George's County, 302 F.3d 188, 203 (4th Cir. 2002) ("if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) *possesses*

---

[9] Johnson's affidavit states that standard procedure during a shakedown is to cuff the inmate in front so that he can help carry his mattress and pillow to the x-ray machine and to move the cuffs to the back while the officers search the other items in his cell. Johnson states that this standard procedure varies only if the inmate has a medical order requiring special cuffing. Pope states, however, that he recalls cuffing an inmate to the front on November 29, 2012, during the cell search after he complained about shoulder pain from back cuffing, even though he did not have a medical order.

[10] The defendants argue that an x-ray of Makdessi's shoulder in December 2012, a few weeks after the shakedown, did not show significant arthritic changes or any acute injury. They do not dispute, however, Makdessi's evidence that back cuffing caused him severe pain during the shakedown itself and that he told the officers so before and during the cuffing process. Makdessi also submits an x-ray report from several months later, showing significant arthritic changes. He alleges that a doctor told him such changes would take time to develop after an injury.

7

the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly") (emphasis added).

The court also does not find any material fact in dispute on which Makdessi could hold the other Keen Mountain defendants liable for the alleged retaliatory cuffing. Makdessi asserts that Fleming, Clary, Sykes, Owens, and Phillips "allowed and encouraged" the strike force to shakedown the protective custody unit inmates. Yet, he offers no evidence that any of these officers was present during, or participated in, the cuffing process; had any foreknowledge that Makdessi would be seriously harmed by that process; or had any authority over the strike force officers' protocol. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding supervisory liability requires showing that official was involved "personally in the deprivation of the plaintiffs' rights" because "the doctrine of respondeat superior has no application" under § 1983); Randall, 302 F.3d at 203 (regarding bystanders). Accordingly, he has not stated sufficient facts to hold them liable for the actions of the strike force. Therefore, the court will grant summary judgment for Fleming, Clary, Sykes, Owens, and Phillips on Makdessi's claim of retaliatory cuffing.

## D. Cuffing to the back as deliberate indifference

Makdessi also asserts that cuffing him behind his back constituted deliberate indifference to a substantial risk that this procedure would cause him serious harm, in violation of the Eighth Amendment.[11] Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). To survive summary judgment on such a claim, he must forecast evidence on which a reasonable fact finder could determine that the defendant official was aware of facts from which he could infer that "an excessive risk to inmate health or safety" existed, that he actually drew such an inference, and then disregarded

---

[11] The defendants have analyzed this aspect of Makdessi's complaint as alleging that cuffing him to the back constituted excessive force. Because Makdessi consistently refers to the claim as one of "deliberate indifference," however, the court will consider his allegations under this legal theory.

8

the risk by failing to take "reasonable measures" to alleviate it. Id. at 837. He "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotations omitted). On the other hand, while prison officials must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), "[t]o the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only "extreme deprivations" can satisfy the objective element of an Eighth Amendment claim challenging conditions of confinement. Hudson, 503 U.S. at 9.

The court concludes that Makdessi has pled sufficient facts to survive summary judgment on his claim that Pope, Ayers, Johnson, and Kelly acted with deliberate indifference to a known risk that cuffing him behind his back would cause him severe pain and perhaps injury. The court finds material facts in dispute and will, therefore, deny summary judgment on this aspect of Makdessi's complaint as to Pope, Ayers, Johnson, and Kelly.

For the reasons already discussed, however, the court finds no material dispute on which Makdessi could persuade a factfinder to hold Yates, Phillips, or any of the supervisory Keen Mountain officials liable under § 1983 for causing him pain during the cuffing procedures. He has not stated facts showing personal involvement by any of these defendants in the cuffing procedures during the shakedown. Vinnedge, 550 F.2d at 928. Therefore, the court will grant summary judgment for Fleming, Clary, Owens, Sykes, Yates, and Phillips on this Eighth Amendment claim.

9

### E. Confiscation of legal materials

Makdessi also claims that during the shakedown, Pope, Ayers, Johnson, and Yates removed legal documents and writing supplies purchased from the commissary, and claims he overheard them alluding to his prior lawsuit as they did so. Defendants submit a copy of a shakedown report from that date, indicating that the officers found no damaged, excessive, or contraband property in Makdessi's cell. They state that they would have disposed of any trash items found during the shakedown, but deny removing any legal materials or commissary items.

The court finds no material disputed fact on which Makdessi could persuade a reasonable fact finder to hold the defendants liable on this retaliation claim. Even assuming without finding that the officers threw away some documents and supplies during the shakedown because of the lawsuit, Makdessi fails to allege facts indicating any specific, adverse effect this conduct had on his litigation efforts in his prior case. Wicomico County, 999 F.2d at 786. Without this element established, his retaliation claim fails. For the same reason, Makdessi cannot prevail on a separate claim that the alleged confiscation of legal documents and materials violated his right to access the courts. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (holding that inmate states no actionable access claim absent a specific showing that a challenged action caused harm to his litigation efforts).

Makdessi also has no due process claim related to the alleged loss of his legal materials during the shakedown. Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson, 468 U.S. at 533. Because Makdessi possessed tort remedies under Virginia state law by which to seek recovery of the monetary value of the missing items, see Va. Code Ann. § 8.01-195.3, he cannot prevail in a

10

constitutional claim for the alleged property loss. For the stated reasons, the court grants summary judgment for the defendants as to all claims related to the allegations of confiscated legal materials.

**F. The strip search**

Makdessi alleges that before the shakedown of his cell, the strike force officers ordered him to strip naked, bend over, squat, spread his buttocks, lift his testicles, and shake his penis so they could see if he had a zip gun or other contraband secreted in his body. Makdessi considered this visual strip search to be "sexual in nature." (Amend. Compl. 2.) He states that he told the officers how the process was causing him pain in his shoulder and back and caused him emotional distress by reminding him of being raped by his cell mate at Wallens Ridge, but the officers "didn't care." (First Verified Response 2, ECF No. 46.)

Makdessi states no facts on which a jury could find that his exercise of his right to access the courts was a substantial factor motivating the officers to perform the strip search, as required to prove a § 1983 retaliation claim. Wagner, 13 F.3d at 90-91. Rather, the record establishes that this procedure, conducted on all inmates at Keen Mountain that day, was simply a step in the shakedown process, allowing officers to ensure that an inmate did not have a zip gun or other weapon on his body to use against the officers while they conducted the cell search.

For similar reasons, Makdessi's independent constitutional challenges to the strip search under the Fourth and Eighth Amendments also fail. The Fourth Amendment bars governmental agents from conducting searches that are unreasonable under the circumstances, given the balance between the "need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559 (1979) (rejecting Fourth Amendment challenge to detention facility procedure requiring visual body cavity search of detainee after

11

contact visits). This reasonableness inquiry considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. Makdessi has not stated facts on which a reasonable fact finder could determine that the strip search he and all other Keen Mountain inmates underwent on November 29, 2012, was unreasonably invasive or otherwise unreasonable under the Fourth Amendment, in light of the zip gun information on which the officers were acting. Moreover, because he fails to state facts on which he could show any serious physical or emotional injury he suffered from the strip search, he fails to state any claim that this procedure violated the Eighth Amendment prohibition against cruel and unusual prison conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). For the stated reasons, the defendants are entitled to summary judgment as a matter of law on Makdessi's claims concerning the strip search.

**G. Delay of medical care after the shakedown**

Makdessi alleges that the defendants on the scene at the shakedown should have procured medical care for his shoulder. Thirty minutes later, he allegedly asked Keen Mountain officers for medical attention, but was told that safety came first. Makdessi filed a request for care, and a nurse examined him the next day. Within the week, he saw a doctor and received treatment for pain.

To prove an Eighth Amendment violation related to medical care, Makdessi must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted). An officer acts

12

with "deliberate indifference" if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. An official's intentional act or omission that merely delays an inmate's access to necessary medical care states a constitutional claim only if the plaintiff shows that the defendant's conduct resulted in substantial harm to the patient. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citing other cases).

At the most, Makdessi's claim is that the defendants delayed for one day his receipt of medical attention for his shoulder pain. Yet, other than his verbal complaints of pain, he does not forecast any evidence from which the defendants, who are not medically trained, would have known that his condition after the shakedown warranted immediate medical care. Makdessi also admits that he had other means to seek medical care that day; he could and did seek medical treatment by filing paperwork to be addressed by the nurse, who found no medical need to meet with him until the following day. Finding no material disputed fact on which Makdessi could show that the defendants acted with deliberate indifference to his serious medical needs, the court will grant summary judgment for the defendants on this claim.

**H. Harsh conditions related to trial**

Makdessi contends that the retaliation and deliberate indifference to conditions that caused him pain continued when his prior lawsuit, Makdessi v. Fields, went to trial. On the first day, March 12, 2013, officers allegedly roused Makdessi just after midnight and took him to Owens' office, where he was forced to sit on a metal bench for seven hours, until the transportation officers arrived to take him to court. Makdessi allegedly told Owens that he had undergone back surgery and sitting so long was causing pain in his back and making his legs go numb. Owens allegedly said, "We can cancel your lawsuit if you want." (Amend. Compl. 5.)

13

Owens offers evidence indicating that Makdessi likely waited for only three hours before being transported to court.[12] Whether Makdessi's wait in Owens' office was three hours or seven, however, it is undisputed that such a wait is standard prison procedure. Any inmate being transported away from the prison is brought to the watch commander's office at the time of early morning count and waits there until his transportation arrives. During the wait time, he may eat breakfast and use the bathroom. Because the record establishes that Makdessi's wait was simply part of standard transportation procedure, rather than punishment for his bringing a lawsuit, Makdessi cannot establish a retaliation claim here. Moreover, the record clearly establishes that the discomfort and inconvenience of the prison's transportation procedures, however harsh, are merely a "part of the penalty" that Makdessi as a criminal offender "must pay for [his] offenses against society." Rhodes, 452 U.S. at 347. Therefore, the court will grant summary judgment on this claim.

Makdessi also complains that during his second day in court, the escorting officers strapped the security waist belt to him so that it caused him pain, ignored his complaints, laughed and threatened to shock him, and refused to remove the device. Use of a stun belt under an inmate's clothing as a security measure while he is in the courtroom is another standard prison procedure, as the court has observed many times. Even assuming that the device made Makdessi uncomfortable and fearful in the courtroom and unable to concentrate, as he alleges, he fails to identify any evidence or argument that he and his attorneys were not able to present in his case as a result of the stun belt use. Makdessi simply does not show that use of the device on March 13, 2012, was intended to punish him for bringing the lawsuit or that it had any constitutionally significant, adverse impact on his litigation efforts. Furthermore, Makdessi does not show that

---

[12] Records from March 12, 2013, indicate that early morning count cleared at 3:25 a.m. and the transportation team logged out at 6:26 a.m. that day.

14

any of the defendants played any role in applying the device to him on March 13, 2012. The court will grant summary judgment for the defendants as to any claim regarding the use of the stun belt.

## I. Threats, sexual assaults, and segregation

After the shakedown, Defendants Sykes and Phillips allegedly told Makdessi that if security needs required it, Keen Mountain officers could cuff him behind his back like the strike force officers did, even if it reinjured his shoulder. Phillips also allegedly said that he could do what the strike force officers had done and "put his fingers up [Makdessi's] rectum." (Amend. Compl. 3.) Makdessi alleges that when he started filing administrative remedy forms about the shakedown and the comments Sykes and Phillips had made, Sykes and Clary warned him that if he sued Keen Mountain officers, he would be placed in segregation. Nevertheless, in February 2013, Makdessi brought this action, naming Sykes and others as defendants. Then, on April 15, 2013, Makdessi made an allegation that Phillips had sexually assaulted him. Officials immediately placed Makdessi in segregation for ten days without any disciplinary charge. He alleges that segregation officers (not parties to this case) cuffed his hands to the back several times, causing further pain and injury to his left shoulder and injuring his right shoulder as well. Makdessi apparently claims that Sykes and Phillips threatened him and placed him in segregation in retaliation for his sexual assault complaint and his lawsuits.

The defendants' undisputed evidence indicates, however, that whenever an inmate brings a claim that he has been sexually assaulted, security protocol requires switching that inmate from his protective custody assignment to a temporary segregation assignment, pending the investigation of the sexual assault complaint. Sykes states that after officials investigated Makdessi's complaints and deemed them unfounded, ranking officials switched Makdessi back

15

to his protective custody assignment on April 25, 2013. As a corrections officer, Phillips had no authority to change an inmate's assignment to segregation status.

The court finds no material disputed fact on which Makdessi could prove this asserted claim of retaliation. The officers' verbal threats alone did not violate Makdessi's rights. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (finding guards alleged verbal abuse states no constitutional claim). Moreover, segregating Makdessi temporarily during the investigation of his sexual assault allegations was a standard prison security precaution.[13] He simply fails to state facts on which he could show that Sykes, Clary, or Phillips caused his assignment to segregation in order to punish him in any way for making the sexual assault complaint or for bringing lawsuits against them or other prison officials.[14] The court will grant summary judgment for the defendants on his claims regarding verbal threats and assignment to segregation on April 15, 2013.

---

[13] To the extent that Makdessi is attempting to allege violations of the Prison Rape Elimination Act, 42 U.S.C. §§ 15601-15609 ("PREA"), as he mentions in one of his responses, he has no actionable claim. "Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." De'lonta v. Clarke, No. 7:11CV00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (collecting cases), aff'd, 548 F. App'x 938 (4th Cir. 2013) (per curiam).

[14] In one of his responses to the summary judgment motion, Makdessi alleges that Sykes somehow ordered or encouraged the segregation officers to cuff Makdessi's hands to the back in order to harm his shoulder. Makdessi did not present any such claim against Sykes in the amended complaint, however. Moreover, his own submissions do not support a claim that Sykes acted with deliberate indifference in this regard. Makdessi submits a copy of a request form he sent to Sykes on April 17, 2013, about other officers cuffing him behind his back while he was in segregation. (First Verified Response Ex. 1, ECF No. 46-1.) He asked Sykes to find out if the medical unit had an order on file requiring front cuffing or double cuffing for Makdessi. Sykes replied that as of April 19, 2013, no such order was on file. He advised that although he himself had chosen in the past to front cuff or double cuff Makdessi in light of his shoulder complaints, in the absence of an order requiring this accommodation, other officers would cuff him "according to protocol." (Id.) Contrary to Makdessi's characterization, Sykes' response does not support a finding that he had authority to order segregation officers to cuff Makdessi in any particular way or that he did so.

Makdessi also alleges in various submissions that between November 2012 and April 15, 2013, Phillips sexually assaulted him during pat down searches, sexually harassed him while he was using the toilet in his cell, and falsely accused him of violating his religious diet so that it was suspended. The amended complaint did not state any separate claims against Phillips based on this alleged conduct, however, and the court will not allow Makdessi to add them to the lawsuit at this late date. Moreover, such claims are not properly joined to the claims in this action. See Fed. R. Civ. P. 18 & 20 (regarding joinder of claims and defendants).

16

### III. Conclusion

For the reasons stated, the court concludes that the defendants' motion for summary judgment must be denied as to Makdessi's claims of retaliation and deliberate indifference against Pope, Ayers, Johnson, and Kelly for cuffing him behind his back on November 29, 2012; but the court finds that the motion must be granted as to all other claims. The court will set the remaining claims for a jury trial in Abingdon, the division where the cause of action arose. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 22d day of September, 2014.

*/s/ Glen Conrad*
Chief United States District Judge