CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 02 2015
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADIB EDDIE RAMEZ MAKDESSI, | ) | CASE NO. 7:13CV00079 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| AYERS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Adib Eddie Ramaz Makdessi, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. The court denied defendants' motion for summary judgment as to Makdessi's claim that on November 29, 2012, at Keen Mountain Correctional Center, a group of prison officials handcuffed him behind his back to retaliate against him for a pending lawsuit, knowing that their actions would cause serious pain to his injured shoulder. Makdessi having waived his right to a jury trial, the court referred the case to U.S. Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b), for conduct of appropriate proceedings.

Judge Sargent conducted a court proceeding on December 10, 2014, in Abingdon, in which she heard testimony from the parties' witnesses and viewed their evidence, including four hours of surveillance camera footage of the incident from two different cameras. The case is presently before the court on Judge Sargent's report and recommendation ("the report") and plaintiff's objections thereto.

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making "a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made." 28 U.S.C. § 636(b)(1). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," the authority and the responsibility to make an informed final determination remains with the district judge. United States v. Raddatz, 447 U.S. 667, 682-83 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).

Makdessi objects to the report's omission of particular evidence he presented.[1] In light of these objections, the court has specifically reviewed the evidence Makdessi has highlighted. The court also conducted de novo review of the hearing transcript and exhibits, including the camera footage discussed by the parties during the hearing.

Finding that the weight of the evidence fully supports all of the factual findings of the report and the legal conclusions of the report regarding Makdessi's retaliation claim, the court will overrule Makdessi's objections and adopt Judge Sargent's factual findings and her legal conclusions regarding the retaliation claim. Makdessi simply did not prove by a preponderance of the evidence that at the time of the November 2012 shakedown for a suspected zipgun at Keen Mountain, the defendant officers had knowledge of his then-pending lawsuit concerning past events at Wallens Ridge. Accordingly, he failed to prove that defendants' actions that day were motivated by his exercise of a constitutionally protected right, as required to prove a § 1983 claim of retaliation. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

---

[1] Makdessi also raises a wholesale objection to "the accuracy of the facts" and "the findings and conclusions" of the report (Obj. 7, ECF No. 123). Although the court does not find that this generalized objection triggers an obligation for de novo review under § 636(b)(1), the court has, nevertheless, reviewed the hearing evidence and the report in their entirety.

2

The court also concludes that Judge Sargent's findings of fact and conclusions of law are correct as to Makdessi's Eighth Amendment deliberate indifference claim. The United States Court of Appeals for the Fourth Circuit recently reemphasized the constitutional analysis for such claims in Thomas v. Young:

> The Eighth Amendment's prohibition against cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety." Makdessi v. Fields, ___ F.3d ___, ___, 2015 WL 1062747, at *5 (4th Cir. Mar. 12, 2015). "For a claim based on a failure to prevent harm, the [prisoner] must [first] show that he was incarcerated under conditions posing a substantial risk of serious harm." Id. (internal quotation marks omitted). Next, the prisoner must establish that the prison official had "a sufficiently culpable state of mind," that is, "deliberate indifference to [the] inmate['s] health or safety." Id. (internal quotation marks omitted).
> A prison official "is deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] knows of and disregards the risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (internal quotation marks omitted). However, "prison officials may not simply bury their heads in the sand and thereby skirt liability" by claiming that they were not aware of the risk. Makdessi, ___ F.3d at ___, 2015 WL 1062747, at *6. Finally, the prisoner must establish that the prison official's deliberate indifference caused his injury. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (stating elements of deliberate indifference to substantial risk of serious harm claim).

No. 7:14CV00510, 2015 WL 3727012, at *1-2 (4th Cir. June 16, 2015). Although Judge Sargent filed her report before the Makdessi and Thomas decisions issued, the court concludes that her findings and conclusions are consistent with their tenets.

Related to the deliberate indifference claim, Judge Sargent made findings of fact and conclusions of law that Defendants Johnson, Pope, and Ayers conducted the search of Makdessi's cell, and Defendant Kelly was present as one of several supervisory officers; that Makdessi had no medical order for front cuffing, but officers had discretion to cuff to the front or back; that Makdessi was cuffed to the back, as were several other inmates in his pod; that from

3

Makdessi's behavior and the medical record he allegedly displayed, the officers were not aware of a substantial risk that cuffing him to the back placed him at a substantial risk of serious harm to his shoulder; and that the officers were not deliberately indifferent. In his objections, Makdessi complains that the report omits the following facts in his favor: (a) he told the officers he would suffer pain from being cuffed to the back; (b) as he showed the court during the hearing, he is unable to place his hands together behind his back, so the officers had to physically force his hands close enough to cuff them to the back; (c) when they did so, he "started screaming from the pain, [he] started causing a little bit of a disruption" (Transcript 150, ECF No. 126); (d) that Inmate Donovan Starling testified of hearing Makdessi in a confrontation with Defendant Kelly;[2] (e) Defendant Pope remembered a KMCC inmate showing him paperwork about a shoulder injury and causing a disruption to be cuffed to the front;[3] (f) Makdessi's medical records since the November 2012 shakedown, along with Dr. Hopkins' testimony at the hearing, prove the defendants' actions caused Makdessi to develop arthritis in his shoulder;[4] and (g) the defendants must have known of Makdessi's past shoulder injuries from information

---

[2] Inmate Starling testified: "[O]ther than the shakedown, what caught my attention, you know, during that day is a little confrontation you were having with – with Mr. Kelly." (Tr. 121-22.) After Makdessi asked, "Do you recall hearing me complain that day?" Starling testified, "Yeah. Yea, I recall." (Tr. 122.) On cross examination, Starling testified that he was inside his cell on the top tier at the time Makdessi's cell was searched.

[3] In support of the summary judgment motion, Pope signed an affidavit including this information, along with his stated belief that this inmate "may have been Makdessi." (Pope Affid. ¶ 5, ECF No. 62-5.) The affidavit also stated that because of the disruption, the officers "allowed him to remain cuffed in the front during the cell search, with an officer posted beside him for security purposes." (Id.) At the hearing, Pope testified that: he did not recall Makdessi showing him medical records about shoulder pain; he might have encountered the inmate described in the affidavit during another shakedown at a different prison; and the inmate in the affidavit could not have been Makdessi, who was cuffed to the back during the cell search.

[4] Because Judge Sargent found that Makdessi had not established defendants' knowledge of a substantial risk that cuffing him to the back would cause him serious harm, she recommended judgment in their favor without discussion of Makdessi's alleged injuries. The court follows the same progression of factual and legal findings and conclusions and, therefore, need not address the nature of the injuries, if any, that Makdessi suffered from being cuffed to the back on November 29, 2012. In any event, the court cannot find that Makdessi has proven by a preponderance of the evidence that being cuffed to the back on November 29, 2012, caused him serious harm. See Caldwell, 748 F.3d at 1099.

4

entered in "CORIS," the interagency computer system containing offender information.[5] Having reviewed the hearing evidence, the court concludes that Makdessi's objections to Judge Sargent's findings and conclusions must be overruled as outweighed or discredited by other evidence in the record, including the video footage reviewed and discussed at length during the hearing.

The court agrees with Judge Sargent that even assuming, as Makdessi testified, he showed the shakedown officers a portion of his medical record regarding his complaints of shoulder pain in March 2012, that record did not put the officers on notice that he would suffer serious harm if cuffed to the back. (See Plaintiff's Exhibit 7.) Makdessi had no medical order requiring that he be cuffed to the back. Because of a prior incident, Keen Mountain's standard procedure was to cuff inmates to the back during a cell search, and the video indicates that although many inmates remained cuffed to the front during the entire shakedown process on the lower tier, other inmates besides Makdessi and his cell mate were cuffed to the back during the cell search process. In any event, the video is consistent with officers' testimony that Makdessi did not "scream" or otherwise cause a disruption from which the officers must have known that

---

[5] The testimony adduced at the hearing does not support Makdessi's argument that the shakedown officers must have known of his prior shoulder problems from CORIS. Nurse Hall testified that some medical information is entered in CORIS. Warden Fleming testified, however, that because access to inmates' medical records is restricted by federal law, officers viewing CORIS information about an inmate would see only limited "alerts" regarding medical conditions, such as a medical order for certain housing assignments. (Tr. 234.) Fleming testified that Makdessi's prior victimization by a cell mate would have triggered an alert in CORIS, which resulted in his protective custody assignment at Keen Mountain. Fleming also testified that such alerts are reviewed for cell assignment situations and that officers would not check CORIS for cuffing information during a shakedown. Makdessi presented no evidence showing that his CORIS alerts in November 2012 would have notified officers of his past shoulder pain complaints or his prior lawsuit.

In his objections to the report, Makdessi states that since November 2012, when he has complained about his shoulder problems in a cuffing situation, officers have checked CORIS and then agreed to cuff him to the front. For purposes of this opinion, the court will presume this statement to be true. Nevertheless, given the evidence as a whole, the court cannot find that defendants' failure to check CORIS before cuffing Makdessi to the back during the shakedown for the zipgun constituted "'bury[ing] their heads in the sand [to] skirt liability' by claiming that they were not aware of the risk." Makdessi, ___ F.3d at ___, 2015 WL 1062747, at *6. Makdessi admits that he has never seen his CORIS alerts, and the willingness of other officers to accommodate his shoulder complaints in other, nonemergency cuffing situations does not prove that they did so because of CORIS alerts showing that Makdessi will suffer serious harm if cuffed to the back.

5

cuffing him to the back would cause him serious harm. The behavior of officers, other inmates, Makdessi himself, and the patrol dog present in the unit, as shown on the video footage, does not suggest that any such a disturbance occurred. The video shows Makdessi and his cell mate, cuffed to the back, calmly standing at their cell door for more than half an hour.[6] In light of the contradictory video footage, the court cannot find credible Makdessi's testimony that he screamed in pain while cuffed behind his back or Starling's account that he heard Makdessi complaining.

Based on the factual findings in the report and the court's own de novo review of the record as reflected in this opinion, the court concludes that Makdessi has failed to prove his case by a preponderance of the evidence. Therefore, the court will enter judgment for the defendants. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 2ℓ day of July, 2015.

_____
Chief United States District Judge

---

[6] It is clear from the video footage that the search of Makdessi's cell took a much longer time than did the searches of other cells. It is undisputed that Makdessi had hundreds of pages of legal documents in his cell and that the shake down officers had to search such paperwork by hand. Defendants' evidence was that this lengthier search presented some justification for cuffing Makdessi and his cellmate to the back to ensure security during the search without an additional officer posted beside them.